**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 95-5736

ALLEN D. SPENCER,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                                               No. 95-5737

SPENCER'S SAFE & LOCK SERVICE,
INCORPORATED,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-95-150-A)

Argued: September 27, 1996

Decided: October 21, 1996

Before WILKINSON, Chief Judge, and RUSSELL and HALL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John David Quinn, SALE, QUINN, DEESE & WEISS, P.C., Washington, D.C., for Appellants. Jack I. Hanly, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Brian W. Shaughnessy, SHAUGHNESSY, BOROWSKI & GAGNER, Washington, D.C., for Appellants. Helen F. Fahey, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Allen D. Spencer and Spencer's Safe & Lock Service, Inc. were each convicted on seventeen counts of submitting fraudulent claims to the government in violation of 18 U.S.C. § 287. Appellants challenge their convictions by alleging that their claims were valid under a reasonable interpretation of the contract, that the district court erroneously prevented appellants from presenting the testimony of an expert witness, that the court erred in not giving three of appellants' proposed jury instructions, that the loss amount used in sentencing was without adequate basis, and that the court should have required the government to grant appellants' general manager immunity to testify. We find no merit in these contentions and affirm the judgment of the district court.

I.

Allen Spencer is the president of Spencer's Safe & Lock Service, which in 1988 was awarded a contract to supply the United States Department of State with locksmith services. The contract originally

2

provided payment just for labor, but was modified to cover both time and materials. Spencer's was to provide on-call service with "[h]ourly payments [to] begin upon arrival at the work site and end upon completion of the job."

Almost all of the work invoices at issue involved work done by Spencer's employee Warren Sandgren. Following a request by Spencer's, the State Department provided Sandgren with a shop area on Department premises where he was on-call throughout the day. Sandgren and other locksmiths sometimes recorded the hours spent on particular work projects on incomplete work invoices and submitted copies to the State Department, allowing the Department to ensure that the work in question had been done. Once such an invoice reached Spencer's, Spencer had his clerks fill out the rest of the invoice, blacken out the notations made by the locksmiths, and submit the completed invoice to the State Department for billing.

State Department employees learned that the hours billed by Spencer's often exceeded those initially recorded by the locksmiths. The State Department Inspector General conducted an investigation which ultimately led to the charges against appellants.

II.

Appellants contend that their claims were valid under a reasonable interpretation of the contract because they represented billing for the time Sandgren spent on duty at the State Department. The contract states, "Hourly payments begin upon arrival at the work site and end upon completion of the job." Appellants argue that under this language Spencer reasonably concluded that "arrival at the worksite" occurred when Sandgren arrived at the State Department in the morning and "completion of the job" referred to his departure at the end of the day. Spencer claimed that accordingly he billed approximately 45 hours per week for Sandgren's work.

First, we do not believe that this is a reasonable interpretation of the contract language. The contract does not require Spencer's to have an employee at the State Department but simply to provide on-call service twenty-four hours a day, seven days a week. The contract

3

does not contemplate compensation for on-call time but for time and materials spent on specific work jobs.

More importantly, even under appellants' proposed interpretation of the contract, their claims were fraudulent. The invoices in question did not indicate that they were for Sandgren's time on-site at the State Department; they purported to be for time he spent on particular work assignments. In addition, Spencer stated that he billed 45 hours per week, but Sandgren was actually at the Department only 40 hours per week. Sandgren testified that his usual hours were 8:00 a.m. to 4:00 p.m., testimony that Spencer corroborated on cross-examination.

III.

Appellants also maintain that the court should have permitted attorney Richard Edgecomb to testify as an expert regarding the modification of contracts by course of performance. Contract interpretation, however, is generally an issue for the court, which obviously requires no expert testimony on the subject. Even when an interpretive issue requires jury resolution, the court, not an expert witness, instructs the jury regarding the law. We therefore find that the district court properly refused to allow appellants' expert to testify.

IV.

Appellants argue that the district court should have given three jury instructions they proposed regarding interpretation of the contract. This case, however, did not involve any contract ambiguities requiring jury consideration. Accordingly, the district court appropriately declined to give the proposed instructions.

As noted, we find that appellants' interpretation of the contract itself is not reasonable. The only other alleged interpretation issue is whether the contract was modified by course of performance. Specifically, appellants claim that the contract was modified to authorize payment for services not rendered on State Department premises, for parts deliveries, and for the time Sandgren spent each day at the Department.

4

The alleged modifications regarding off-site work and parts deliveries are simply irrelevant. Uncontradicted testimony establishes that the government excluded from its case any invoices where the locksmith who had performed the work could suggest a reason, such as off-site work or a parts delivery, for the increased hours billed.

As to the third modification, appellants present no evidence that the State Department was aware of appellants' belief that Spencer's was entitled to bill for Sandgren's time at the Department. Consequently, it is impossible to conclude that the Department ratified the alleged modification by its conduct. In support of their argument, appellants point to the fact that the Department paid the inflated bills and assert that the Department "required" Spencer's to station an employee on Department premises full-time. Payment of the invoices, however, cannot indicate recognition and approval of this alleged modification because, as noted previously, the invoices stated that they were for specific work assignments, not for Sandgren's time at the Department. In addition, Spencer himself testified that Sandgren was stationed at the Department after a request by the appellants.

Because none of these issues required jury consideration, the district court properly omitted the proposed jury instructions.

V.

Appellants also claim that the government suffered no loss, contending that Spencer's billed only for Sandgren's time although it was also entitled to charge for off-site work and parts deliveries related to his work. We are compelled, however, to uphold the district court's determination that the government suffered a loss of $27,016.48; that figure is adequately supported by the record and therefore not clearly erroneous. See United States v. West, 2 F.3d 66, 71 (4th Cir. 1993).

The court relied initially on the $13,623.21 loss established by evidence at trial. That figure represents the difference between the hours recorded by the locksmiths performing the work and the hours actually billed, multiplied by the appropriate hourly rate for the type of work performed. The invoices used to calculate this figure included only those for which the locksmiths could not suggest any reason, such as off-site work, for the increased hours billed.

5

Based on this figure, the court determined that Spencer's overbilled by 27.59 percent on the invoices where the locksmiths had recorded their hours. For the same time period, the court estimated that Spencer's overbilled at the same rate on invoices where the locksmiths had not recorded their hours, thus deriving a total loss amount of $27,016.48. We find these calculations to be a reasonable assessment of the government's loss.*

VI.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

_____

*Appellants' witness immunity claim is not worthy of extended discussion. The decision to grant immunity is normally a matter of prosecutorial discretion. Appellants fail to provide a compelling reason to interfere with the exercise of that discretion.